MAINE SUPREME JUDICIAL COURT                                   Reporter of Decisions
Decision:     2013 ME 27
Docket:       Aro-12-170
Argued:       January 15, 2013
Decided:      March 5, 2013

Panel:        SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and
              JABAR, JJ.

JEFFREY STOOPS et al.

v.

RICHARD NELSON et al.

JABAR, J.

[¶1]   Jeffrey and Jeanne Stoops appeal from a judgment entered in the Superior Court (Aroostook County, *Hunter J.*), granting Richard and Betty Nelson's[1] motion for summary judgment declaring that the Nelsons properly acquired title through a municipal quitclaim deed to property located in Madawaska that the Stoopses once owned.  The Stoopses argue that the court erred in granting the Nelsons' motion for summary judgment because the Town of

---

[1]   The Stoopses' initial complaint did not include Betty Nelson as a named defendant.  On October 9, 2009, the Stoopses filed an unopposed motion to amend the complaint to add Betty as a necessary party pursuant to M.R. Civ. P. 19(a); that motion was never ruled upon by the court. Nevertheless, it is apparent from the record that after the motion was filed, the parties and the court proceeded as if Betty were a party to the action: counsel for Richard Nelson also acted as counsel for Betty, signing court documents as "Attorney for Richard and Betty Nelson"; documents were captioned with Betty listed as a party; and the Stoopses filed their notice of appeal against Richard and Betty Nelson.  Therefore, although the court did not rule on the motion to amend the complaint, "[i]n this context, remand for joinder of additional parties is unnecessary." *Cf. Muther v. Broad Cove Shore Ass'n*, 2009 ME 37, ¶ 9, 968 A.2d 539 ("Joinder is required in circumstances where the absence of unnamed parties would prevent a judgment from fully adjudicating the underlying dispute, expose those who are already parties to multiple or inconsistent obligations, or prejudice the interests of absent parties.").

Madawaska, which foreclosed on the property and subsequently sold it to the Nelsons, failed to give the Stoopses proper notice of the pending foreclosure in violation of the Due Process Clause of the Fourteenth Amendment. Additionally, the Stoopses argue that the Town failed to adhere strictly to the requirements of 36 M.R.S. §§ 942 and 943 (2012), which outline the steps a municipality must take in order to foreclose on a municipal tax lien. Because the Town complied with the requirements of the statutory scheme and gave the Stoopses sufficient notice, we affirm the trial court's judgment.

## I. BACKGROUND

[¶2] Rather than submitting separate statements of material facts pursuant to M.R. Civ. P. 56, the parties submitted to the trial court an agreed statement of facts, related exhibits, and cross-motions for summary judgment, aiding the court's review and allowing us to apply the law to the following undisputed facts.

A.   Municipal Tax Lien 2004-05

[¶3]   In 2005, Jeffrey and Jeanne Stoops owned property located at 218 Main Street in Madawaska, and the Town of Madawaska assessed taxes on that property for fiscal year 2004. The Stoopses failed to pay those taxes, and on May 19, 2005, the Town sent a "30 Day Demand" notice (the "2004 section-942

notice") to the Stoopses, as required by 36 M.R.S. § 942.[2] The Town sent the notice in a single envelope by certified mail, return receipt requested, to the residence at 218 Main Street. The notice informed the Stoopses of the amount of municipal tax due, described the property on which the tax was assessed, demanded payment within thirty days, and stated that a lien was placed on the property to secure payment. The notice also warned: "IMPORTANT: DO NOT DISREGARD THIS NOTICE. YOU WILL LOSE YOUR PROPERTY UNLESS YOU PAY YOUR 05 PROPERTY TAXES, INTEREST AND COSTS."[3] Jeanne

---

[2] Title 36 M.R.S. § 942 (2012) provides in pertinent part:

The tax collector may, after the expiration of 8 months and within one year after the date of original commitment of a tax or, in the case of deferred taxes pursuant to chapter 908-A, after the due and payable date established pursuant to section 6271, subsection 5, give to the person against whom the tax is assessed, or leave at the person's last and usual place of abode, or send by certified mail, return receipt requested, to the person's last known address, a notice in writing signed by the tax collector or bearing the tax collector's facsimile signature, stating the amount of the tax, describing the real estate on which the tax is assessed, alleging that a lien is claimed on the real estate to secure the payment of the tax, and demanding the payment of the tax within 30 days after service or mailing of the notice with $3 for the tax collector for making the demand together with the certified mail, return receipt requested, fee. . . .

After the expiration of the 30 days and within 10 days thereafter, the tax collector shall record in the registry of deeds of the county or registry district where the real estate is situated a tax lien certificate signed by the tax collector or bearing his facsimile signature, setting forth the amount of the tax, a description of the real estate on which the tax is assessed and an allegation that a lien is claimed on the real estate to secure the payment of the tax, that a demand for payment of the tax has been made in accordance with this section, and that the tax remains unpaid. . . .

[3] The parties agreed to a statement of facts in which the 2004 section-942 notice received by Jeanne Stoops relates to the 2004 property taxes. The notice, however, indicates that it is the 2005 property taxes at issue. This inconsistency can be attributed to the fact that the Town assessed taxes in August of 2004, and, pursuant to 36 M.R.S. § 942, the property owner has eight months in which to pay those taxes. Therefore, technically the taxes are for 2004-2005.

4

Stoops signed the certified mail receipt acknowledging that she received the notice. On June 23, 2005, the Town recorded a tax lien certificate in the registry of deeds.

[¶4]  Although not required by statute, on October 26, 2006, the Town sent a letter (the "2004 lien-foreclosure-warning letter"), via first class mail, addressed to Jeffrey Stoops, informing him that the property taxes secured by the lien were still due and that the Town would begin the process of acquiring the property if he did not pay.  That letter was not returned.  On November 14, 2006, as required by 36 M.R.S. § 943,[4] the Town sent the Stoopses, by certified mail, return receipt

---

[4]  Title 36 M.R.S. § 943 (2012) provides in pertinent part:

> The filing of the tax lien certificate in the registry of deeds shall create a tax lien mortgage on said real estate to the municipality in which the real estate is situated having priority over all other mortgages, liens, attachments and encumbrances of any nature, and shall give to said municipality all the rights usually incident to a mortgagee, except that the municipality shall not have any right of possession of said real estate until the right of redemption shall have expired.
>
> The filing of the tax lien certificate in the registry of deeds shall be sufficient notice of the existence of the tax lien mortgage.
>
> In the event that the tax, interest and costs underlying the tax lien are paid within the period of redemption, the municipal treasurer or assignee of record shall prepare and record a discharge of the tax lien mortgage in the same manner as is now provided for the discharge of real estate mortgages, except that a facsimile signature of the treasurer or treasurer's assignee may be used.
>
> If the tax lien mortgage, together with interest and costs, shall not be paid within 18 months after the date of the filing of the tax lien certificate in the registry of deeds, the said tax lien mortgage shall be deemed to have been foreclosed and the right of redemption to have expired.
>
> The municipal treasurer shall notify the party named on the tax lien mortgage and each record holder of a mortgage on the real estate not more than 45 days nor less than 30 days before the foreclosing date of the tax lien mortgage, in a writing signed by the

requested, a "Notice of Impending Automatic Foreclosure," (the "2004 section-943 notice") informing them that the tax lien mortgage would be foreclosed upon on December 23, 2006. The notice was returned unclaimed.[5]

B.     Municipal Tax Lien 2005-06

[¶5]   On May 16, 2006, the Town sent by certified mail, return receipt requested, a "30 Day Demand" notice (the "2005 section-942 notice") to Jeffrey and Jeanne Stoops for unpaid municipal taxes assessed in 2005. The notice was returned unclaimed. On June 19, 2006, the Town recorded a tax lien certificate in the registry of deeds. On October 16, 2007, the Town sent, by first class mail, a letter (the "2005 lien-foreclosure-warning letter") addressed to Jeffrey Stoops,

---

treasurer or bearing the treasurer's facsimile signature and left at the holder's last and usual place of abode or sent by certified mail, return receipt requested, to the holder's last known address of the impending automatic foreclosure and indicating the exact date of foreclosure. . . . If notice is not given in the time period specified in this section to the party named on the tax lien mortgage or to any record holder of a mortgage, the person not receiving timely notice may redeem the tax lien mortgage until 30 days after the treasurer does provide notice in the manner specified in this section.

     . . . .

     After the expiration of the 18-month period for redemption, the mortgagee of record of said real estate or his assignee and the owner of record if the said real estate has not been assessed to him or the person claiming under him shall, in the event the notice provided for said mortgagee and said owner has not been given as provided in section 942, have the right to redeem the said real estate within 3 months after receiving actual knowledge of the recording of the tax lien certificate by payment or tender of the amount of the tax lien mortgage, together with interest and costs, and the tax lien mortgage shall then be discharged by the owner thereof in the manner provided.

[5]  When an item is sent by certified mail, either a person at the residence signs for the item or the postman cites a reason for non-delivery. *Jones v. Flowers*, 547 U.S. 220, 234 (2006). Among other reasons for not delivering a particular item, the postman could check a box for either "unclaimed" or "refused." The postman marked "unclaimed."

6

indicating that the "2004-2005 tax liens" remained unpaid, and that the Town would begin the process of automatic foreclosure if Stoops did not respond by November 5, 2007. On November 5, 2007, the Town sent the Stoopses, by certified mail, return receipt requested, a "Notice of Impending Automatic Foreclosure," (the "2005 section-943 notice") informing them that the tax lien mortgage would be foreclosed upon on December 19, 2007. Jeanne Stoops signed the certified mail receipt acknowledging that she received the notice.

C.     Municipal Tax Lien 2006-07

[¶6]   On May 15, 2007, the Town sent by certified mail, return receipt requested, a "30 Day Demand" notice (the "2006 section-942 notice") to Jeffrey and Jeanne Stoops for unpaid municipal taxes assessed in 2006. The notice was returned unclaimed.[6]  On June 19, 2007, the Town recorded a tax lien certificate in the registry of deeds. On November 13, 2008, the Town sent, by first class mail, a letter (the "2006 lien-foreclosure-warning letter") to Jeffrey Stoops, indicating that the Town had foreclosed on his property and informing him that the Town would be selling the property if he did not negotiate a payment agreement. The letter also informed Stoops that in the aggregate, he owed $9,277.05. On November 17, 2008, a "Notice of Impending Automatic Foreclosure" (the

---

[6]  A Town employee signed the certified mail receipt after the notice was returned to the post office. The parties agree, however, that this notice was unclaimed.

"2006 section-943 notice") was sent by certified mail, return receipt requested, to Jeffrey Stoops, informing the Stoopses that the property would be foreclosed upon on December 31, 2008. The Stoopses' adult daughter signed the certified mail receipt acknowledging that she received the notice. The Stoopses maintain that they do not recall ever receiving any correspondence from the Town regarding unpaid municipal taxes.

D.    Sale and Trial Court Proceedings

[¶7]  On February 3, 2009, the Town conveyed the property to the Nelsons by municipal quitclaim deed. In August 2009, the Stoopses filed a complaint against Richard Nelson and the Town of Madawaska seeking to quiet title to the property and asking the court to declare the respective rights of the parties to the property. The Nelsons counterclaimed, seeking to quiet title in their favor and for similar declaratory relief. The Town's subsequent motion to dismiss was granted. With the consent of the court, the parties filed an "agreed statement of facts" along with cross-motions for summary judgment. The Stoopses argued then, as they do here, that the Town violated their due process rights by failing to provide adequate notice of the pending foreclosure.

[¶8]  The court found that because Jeanne Stoops signed for the 2004 section-942 notice, the Stoopses actually received the notice, and therefore, that receipt was sufficient to satisfy due process. The court stated:

8

> In this case, the court does not face a situation where it has learned that the taxpayer has had no notice. To the contrary, in this case, it is clear that the taxpayer did receive notice. . . . The court concludes that the "30 Day Demand Letter" that the Town sent to both taxpayers regarding the 2004 municipal real estate taxes satisfied the threshold constitutional due process requirement of adequate notice and that nothing more was required. Accordingly, the court finds that the Town successfully foreclosed upon its 2004 municipal tax lien and acquired full ownership of the subject property at the expiration of that redemption period.

The court recognized that the Town's second attempt to notify the Stoopses that their house was at risk went unclaimed but concluded that because the "Notice of Impending Automatic Foreclosure" issued pursuant to 36 M.R.S. § 943 "is not of constitutional import," the unclaimed notice did not alter the court's conclusion that the Town issued sufficient notice. The court granted the Nelsons' motion for summary judgment, declaring that the Town successfully foreclosed on the municipal tax liens for 2004, 2005, and 2006, and that the Nelsons acquired title to the property through the municipal quitclaim deed. This timely appeal followed.

## II. DISCUSSION

[¶9] The Stoopses argue that the Town failed to strictly adhere to the requirements of 36 M.R.S. §§ 942 and 943, and therefore the Town did not properly foreclose on the property. Furthermore, they argue that all of the foreclosure notices sent by the Town are flawed for at least one reason, and therefore to satisfy the Due Process Clause of the Fourteenth Amendment of the

United States Constitution, the Town was required to take additional steps to notify them before foreclosing on the property. "We review the grant of a motion for summary judgment de novo," *Budge v. Town of Millinocket*, 2012 ME 122, ¶ 12, 55 A.3d 484 (quotation marks omitted), and will affirm "if the record reflects that there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law," *Golder v. City of Saco*, 2012 ME 76, ¶ 9, 45 A.3d 697 (quotation marks omitted).

A.    The Town's Compliance with 36 M.R.S. §§ 942 and 943

[¶10]  With regard to the tax lien statutes, pursuant to which a municipality can foreclose upon a taxpayer's real property for failure to pay property taxes, we have previously stated:

> This area of law requires careful attention to statutory requirements by both the Town and the taxpayer. Just as the taxpayer may lose her property if she fails to be vigilant in complying with the requirements, so must the Town strictly adhere to its requirements. Only if departure from the statutory requirements is explicitly allowed by statute will such departure be tolerated.

*Town of Pownal v. Anderson*, 1999 ME 70, ¶ 14, 728 A.2d 1254 (citations omitted). Eight months after the tax is first due, 36 M.R.S. § 942 allows the municipality to give the property owner notice

> signed by the tax collector or bearing the tax collector's facsimile signature, stating the amount of the tax, describing the real estate on which the tax is assessed, alleging that a lien is claimed on the real

estate to secure the payment of the tax, and demanding the payment of the tax within 30 days after service.

After the thirty-day period has expired, the municipality has ten days to file a tax lien certificate in the registry of deeds. 36 M.R.S. § 942.

[¶11] Section 943 provides that once the tax lien certificate is filed in the registry of deeds, the municipality has a tax lien mortgage on the property. 36 M.R.S. § 943. If, eighteen months after filing the tax lien certificate, the tax lien mortgage remains unpaid, the mortgage is deemed foreclosed "and the right of redemption [is deemed] to have expired." *Id.* The municipal treasurer is required to

> notify the party named on the tax lien mortgage and each record holder of a mortgage on the real estate not more than 45 days nor less than 30 days before the foreclosing date of the tax lien mortgage, in a writing signed by the treasurer or bearing the treasurer's facsimile signature and left at the holder's last and usual place of abode or sent by certified mail, return receipt requested, to the holder's last known address of the impending automatic foreclosure and indicating the exact date of foreclosure. . . . If notice is not given in the time period specified in this section to the party named on the tax lien mortgage or to any record holder of a mortgage, the person not receiving timely notice may redeem the tax lien mortgage until 30 days after the treasurer does provide notice in the manner specified in this section.

*Id.* Additionally, if the municipality fails to provide notice in accordance with section 942, then section 943 provides the taxpayer with an additional three months to redeem the property after receiving actual knowledge of the recording of the tax lien certificate.

[¶12]   We have previously interpreted the notice provision of 36 M.R.S. § 943 to "afford[] a thirty day period of redemption *from the time that the municipal officials in fact sent the notice*," provided that they send the notice by one of the methods that the statute provides. *Cummings v. Town of Oakland*, 430 A.2d 825, 831 (Me. 1981).   Therefore, when a property owner has already received notice pursuant to section 942, the Town complies with the statutory scheme and a property is deemed foreclosed thirty days after the municipality sends the section-943 notice, provided that the notice is "left at the holder's last and usual place of abode or sent by certified mail, return receipt requested, to the holder's last known address." *See* 36 M.R.S. § 943; *Cummings*, 430 A.2d at 831. In this case, the parties stipulated that the notices were signed by the appropriate officials, listed the appropriate taxes due, and correctly identified the real estate on which those taxes were due.   The only remaining question is whether the Town complied with the respective timing provisions of 36 M.R.S. §§ 942 and 943. Further, because "[t]he provisions of [sections] 942 and 943 delineate a mechanism to achieve tax collections characterized by the concepts of a tax lien *mortgage* deemed '*strictly' foreclosed* by the mere expiration of a specified period of time after the occurrence of a particular event and on the basis of which, without more and automatically, a transfer of title to the municipality is achieved," *AVCO Delta Fin. Corp. v. Town of Whitefield*, 295 A.2d 921, 924 (Me. 1972), if the Town

12

demonstrates that it complied with the statutory scheme for a single tax year, foreclosure of the municipal tax lien is proper.

[¶13]   For tax year 2004, taxes were assessed on August 17, 2004, and Jeanne Stoops signed for the 2004 section-942 notice roughly nine months later, on May 19, 2005.  The Town recorded its tax lien on June 23, 2005, thirty-five days after the Stoopses received the 2004 section-942 notice.  Because the Town sent its section-942 notice more than eight months after the tax was first assessed, and it recorded its tax lien mortgage thirty-five days after sending the notice, the Town complied with the timing requirements of 36 M.R.S. § 942 for tax year 2004.

[¶14]   Similarly, section 943 dictates that eighteen months after the recording of the tax lien, the tax-lien mortgage is deemed foreclosed if it has not been paid.  Section 943 requires the municipality to "notify the party named on the tax lien mortgage and each record holder of a mortgage on the real estate not more than 45 days nor less than 30 days before the foreclosing date of the tax lien mortgage."   Here, the tax lien was recorded on June 23, 2005, and the eighteen-month redemption period expired on December 23, 2006.  Because the Town sent the 2004 section-943 notice on November 14, 2006, approximately forty days before the expiration of the redemption period, and that notice indicated that the mortgage would be foreclosed on December 23, the section-943 notice was sent within the 30-to-45-day window dictated by section 943.  Still, even though

the Town sent the 2004 section-943 notice within the time prescribed by the statute, the notice was returned to the Town unclaimed. The Stoopses argue that because the section-943 notice was returned unclaimed, the Town was required to take additional steps to comply with the statute.

[¶15] We previously had an occasion to determine whether 36 M.R.S. § 943 requires actual receipt of the section-943 notice. In *Cummings v. Town of Oakland*, the plaintiff-homeowners forwarded a similar argument, "that [section] 943 requires that the property owner be given 'actual notice' of the 'impending automatic foreclosure,'" meaning "that the property owner retains the right to [an] additional 30 day period of redemption until *receipt* of notice of the impending foreclosure." 430 A.2d at 828, 829. In *Cummings*, we focused on the language, applicable at the time, contained in 36 M.R.S. § 943 that stated that "the municipal treasurer *shall notify* the party named . . . in a writing *left at his last and usual place of abode or sent by registered or certified mail, to his last known address*." *Cummings*, 430 A.2d at 828-29 (emphasis added) (quotation marks omitted). We reasoned:

> The words "shall notify" taken by themselves, may in some contexts import a requirement of actual notice or receipt of notice by the person to whom notice is to be given. Such import is negatived, however, where other language specifies the manner in which the notice is to be *given*. In such context, the clear intent of the language is that utilization of the notice mechanism provided for in the statute satisfies the statutory requirement of the *giving* of notice. In short, if

> the municipality *sends* the notice by one of the methods prescribed by the statute, it has *given* notice within the contemplation of the statute.

*Id.* at 829. Although the Stoopses argue that it is time for us to reconsider this aspect of *Cummings*, we decline to do so.

[¶16] As we stated in *Cummings*, "where the legislature speaks in terms *only* of the giving of notice, it did not intend to require actual receipt of the notice or actual communication of its contents as a precondition of the expiration of the period of redemption." *Id.* at 830. By designating the manner in which notice is to *be given* for sections 942 and 943, then requiring *actual receipt* of notice if the procedures dictated by section 942 are not followed, the Legislature demonstrated that it "knows how to draft a statute so as to require the actual communication of the content of a notice in the tax mortgage lien certificate situation." *Cummings*, 430 A.2d at 829. Actual receipt of the 2004 section-943 notice was not necessary because it was sent by certified mail, return receipt requested, as dictated by the statute, and because the 2004 section-942 notice, which was also sent by certified mail, return receipt requested, was *actually* received by the Stoopses. Thus, because the Town met the timing provisions of 36 M.R.S. § 943 and sent the 2004 section-943 notice by certified mail, return receipt requested, it complied with the statute. *See Cummings*, 430 A.2d at 829-31.

[¶17]   Although the court found that the Town complied with the statutory scheme for tax years 2004, 2005, and 2006, we need only determine compliance with respect to a single year to establish that the Town properly foreclosed on the municipal tax lien.   Because the Town strictly adhered to the statutory requirements for tax year 2004, it met its obligations pursuant to sections 942 and 943 to properly foreclose the municipal tax lien.  *See Cummings*, 430 A.2d at 829-31.

B.    Due Process

[¶18]   The Stoopses also argue that the Town violated the Due Process Clause of the Fourteenth Amendment by failing to provide adequate notice of the impending automatic foreclosure.   Specifically, they advance three arguments: (1) the United States Supreme Court's decision in *Jones v. Flowers*, 547 U.S. 220 (2006), overrules our decision in *Cummings*; (2) the Town failed to comply with the requirements of *Jones*; and (3) the section-942 notice is constitutionally insufficient to notify the taxpayer of the pending automatic foreclosure, and thus, the Town is required to provide actual communication of the content in the section-943 notice to satisfy due process.

[¶19]   "Before a State may take property and sell it for unpaid taxes, the Due Process Clause of the Fourteenth Amendment requires the government to provide the owner notice and opportunity for hearing appropriate to the nature of

the case." *Jones*, 547 U.S. at 223 (quotation marks omitted). "Due process does not require that a property owner receive actual notice before the government may take his property." *Id.* at 226. Instead, "due process requires the government to provide notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (quotation marks omitted); *see Livonia v. Town of Rome*, 1998 ME 39, ¶ 6, 707 A.2d 83.

### 1. Whether *Jones* Overrules *Cummings*

[¶20] In *Cummings*, we held that a town's compliance with the requirements of 36 M.R.S. § 942 was sufficient to satisfy due process when the landowners actually received the section-942 notice. *See Cummings*, 430 A.2d at 831-32. In that case, the landowners failed to pay their property taxes, prompting the Town to send each of them notice pursuant to section 942.[7] *Id.* at 827. The landowners signed the certified mail receipts acknowledging that they received the notices. *Id.* Later, the Town sent the section-943 notices, but those notices were returned unclaimed. *Id.* After the redemption period expired, the Town, "considering the [landowners'] home to have been tax-acquired . . . decided to sell the home." *Id.* The landowners discovered the Town's plan and attempted to pay

---

[7] In that case, the husband had title to the building and the wife had title to the land. *Cummings v. Town of Oakland*, 430 A.2d 825, 827 (Me. 1981). Therefore, the Town sent a separate notice to each and filed a separate lien on the property of each. *Id.*

the amount secured by the tax liens. *Id.* The Town refused to accept the payment, prompting the landowners to file suit to compel the Town to accept the payment. *Id.* In ruling that the Town did not violate the landowners' due process rights in foreclosing on the property, we stated:

> The due process notice requirement . . . is a threshold constitutional requirement to assure that the government does not appropriate private property interests without first taking reasonable steps to assure that the property owner is aware of both the danger of the loss of his interest and of the opportunity to avoid the forfeiture by performance of the acts necessary to that end. Once that threshold requirement has been met, the opportunity to avoid the forfeiture is available to the property owner and the burden reposes fully on him to do so by appropriate action. He is not entitled to receive, and the town is not obliged to give, any further notice of the impending danger to his interest in the property. The provision of that opportunity meets fully the constitutional requirement.

*Id.* at 832. Because the landowners received the section-942 notice—as evidenced by the signed certified mail receipts—the Town satisfied its due process notice obligations. *Id.* at 831-32. We held that the "second notice [as required by 36 M.R.S. § 943] is not itself of constitutional magnitude so long as it is given in a nondiscriminatory manner to all persons similarly situated." *Id.* at 832.

[¶21] In *Jones v. Flowers*, the Arkansas Commissioner of State Lands sent a notice of possible foreclosure by certified mail to a property owner because the owner failed to pay taxes on a piece of property. 547 U.S. at 223. The notice was returned unclaimed. *Id.* at 223-24. The property owner lived at a different address

and never received actual notice that his property was in danger of foreclosure. *Id.* "Two years later, and just a few weeks before the public sale," the Commissioner published notice in a local newspaper and later sold the home to the defendant, Flowers. *Id.* at 224. The United States Supreme Court addressed "whether due process entails further responsibility when the government becomes aware prior to the taking [of property by foreclosure due to failure to pay taxes] that its attempt at notice has failed." *Id.* at 227. The Court concluded that "the State should have taken additional reasonable steps to notify Jones, if practicable to do so. . . . [I]f there were no reasonable additional steps the government could have taken upon return of the unclaimed notice letter, it cannot be faulted for doing nothing." *Id.* at 234. The Court suggested that the government could have resent the notice by regular mail so that the notice would be left at the residence with no need for a signature, or could have posted notice on the front door of the residence. *Id.* at 234-35. Still, according to the Court, the decision did not announce any new principle regarding Fourteenth Amendment Due Process, but rather was in accord with previous decisions. *Id.* at 238 (citing *Dusenbery v. United States*, 534 U.S. 161, 171 (2002); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950)). Accordingly, the Court reiterated "that when notice is a person's due," the government must employ means of notifying that person that are "desirous of actually informing" the person that his or her rights are at issue.

*Id.* at 229 (quotation marks omitted); *see also Mullane*, 339 U.S. at 315 ("[P]rocess which is a mere gesture is not due process."). The Court concluded that "at the end of the day . . . someone who actually wanted to alert Jones that he was in danger of losing his house would do more when the attempted notice letter was returned unclaimed, and there was more that reasonably could be done." *Jones*, 547 U.S. at 238.

[¶22] *Cummings* is distinguishable from *Jones* in one important respect: in *Cummings*, the persons to whom notice was due *actually received* notice informing them that they would lose their property if they did not take action. *See Cummings*, 430 A.2d at 829-31. In *Cummings*, our decision hinged on the fact that the homeowners received the section-942 notice, as evidenced by the certified mail receipts they each signed. *Id.* at 827. Because *Jones* involved the government foreclosing on property without providing notice actually desirous of informing the property owner of the pending foreclosure and *Cummings* involved property owners who received actual notice through the means employed by the Town, contrary to the Stoopses' contention, *Jones* does not overrule *Cummings*.

2. Whether the Town Complied with the Requirements of *Jones*

[¶23] Much like in *Cummings*, in this case, Jeanne Stoops signed for the 2004 section-942 notice. The trial court ruled that because Jeanne Stoops actually received the 2004 section-942 notice as evidenced by the certified mail receipt

with her signature, the Town satisfied its due process notice obligations. Nevertheless, under the facts of this case, we need not decide whether the single receipt of a section-942 notice is sufficient to satisfy due process when the Town knows that some notices are returned unclaimed. Here, the Town took additional reasonable steps to inform the Stoopses that they were in danger of losing their home, and the Stoopses *actually received* additional warnings.

[¶24] Unlike the procedures utilized by Arkansas in *Jones*, even after the Stoopses actually received the 2004 section-942 notice, the Town took "additional reasonable steps" by sending the 2004 lien-foreclosure-warning letter, the 2005 lien-foreclosure-warning letter, and the 2006 lien-foreclosure-warning letter, all by regular mail. *See Jones*, 547 U.S. at 234-35 (suggesting that after discovering that an initial notice of foreclosure went unclaimed, the state could satisfy its due process obligations by sending the notice by regular mail). Further, although the 2004 section-943 notice, the 2005 section-942 notice, and the 2006 section-942 notice were returned unclaimed, the Stoopses *actually received* the 2005 section-943 notice and the 2006 section-943 notice, in addition to the 2004 section-942 notice, as evidenced by the certified mail receipts signed by Jeanne Stoops and the Stoopses' adult daughter. Thus, even if we were to decide that the receipt of a single 2004 section-942 notice was insufficient to satisfy due process, in this case the Stoopses received additional warnings that their home was

in danger of automatic foreclosure. As required by *Jones*, the Town took additional reasonable steps to warn the Stoopses of the pending foreclosure by sending the lien-foreclosure-warning letters and sending the section 943-notices. *See Jones*, 547 U.S. at 234-35.

3. Whether the Section-943 Notice is Constitutionally Required

[¶25] The Stoopses also argue that this Court was incorrect in *Cummings* when it stated that "[w]here the state gratuitously provides by statute for an additional warning by notice of 'impending automatic foreclosure' [as required by 36 M.R.S. § 943] . . . that second notice is not itself of constitutional magnitude so long as it is given in a nondiscriminatory manner to all persons similarly situated." *Cummings*, 430 A.2d at 832. The Stoopses assert that because the section-942 notice "does not threaten foreclosure, and does not mention any 18[-]month period within which to pay the taxes or else forfeit the property," the section-943 notice, which specifically threatens automatic foreclosure, is the notice of constitutional import, not the section-942 notice. We disagree.

[¶26] With regard to the substance of notice required by the Due Process Clause of the Fourteenth Amendment, the United States Supreme Court has stated:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to

> convey the required information, and it must afford a reasonable time for those interested to make their appearance.

*Mullane*, 339 U.S. at 314 (citations omitted).

[¶27]  Contrary to the Stoopses' assertions, the section-942 notice actually informs the taxpayer that he or she could lose the property at issue if action is not taken.  Further, although the section-942 notice does not specifically mention the eighteen-month redemption period, the notice does demand that the property owner remit payment within thirty days and also informs the property owner that a lien is being claimed on the property to secure that payment.  As provided in this case, the section-942 notice also stated that the property owner "MAY APPLY TO THE MUNICIPAL OFFICERS FOR AN ABATEMENT OF TAXES IF, BECAUSE OF POVERTY OR INFIRMITY, YOU CANNOT PAY THE TAXES THAT HAVE BEEN ASSESSED."  Under the requirements of *Mullane*, 339 U.S. at 314, the information provided by the section-942 notice is sufficient to apprise property owners that they will lose their property if they do not take action.  The section-942 notice also allows the taxpayer to take action within thirty days to avoid property loss, and the statutory redemption period provides the taxpayer eighteen additional months to take action.  Therefore, the notice provided by a section-942 notice is constitutionally sufficient.  *See Mullane*, 339 U.S. at 314; *Cummings*, 430 A.2d at 832.

### III. CONCLUSION

[¶28]   The Town complied with 36 M.R.S. §§ 942 and 943 by sending notices by certified mail, return receipt requested, to the residence owned and occupied by the Stoopses.   The statutory scheme laid out by the Legislature provides a safeguard against situations like that described in *Jones*, where the government automatically forecloses on a property without adequately notifying the property owners of the pending action.   The Stoopses actually received notice of the pending automatic foreclosure, as evidenced by the certified mail receipts for the 2004 section-942 notice signed by Jeanne Stoops, the 2005 section-943 notice also signed by Jeanne Stoops, and the 2006 section-943 notice signed by the Stoopses' adult daughter.   Further, the Town took additional reasonable steps to notify the Stoopses of the pending automatic foreclosure by sending lien-foreclosure-warning letters by regular mail.   Therefore, the Town did not violate the Stoopses' rights under the Due Process Clause of the Fourteenth Amendment by foreclosing on the municipal tax lien placed on the property.   We affirm the trial court's judgment in favor of the Nelsons.

The entry is:

Judgment affirmed.

24

**On the briefs:**

Jefferson T. Ashby, Esq., Pine Tree Legal Assistance, Inc., Presque Isle, for appellants Jeffrey Stoops and Jeanne Stoops

Richard D. Solman, Esq., Solman & Hunter, P.A., Caribou, for appellee Richard Nelson

Susanne F. Pilgrim, Esq., Maine Municipal Association, for amicus curiae Maine Municipal Association

**At oral argument:**

Jefferson T. Ashby, Esq., for appellants Jeffrey Stoops and Jeanne Stoops

Richard D. Solman, Esq., for appellee Richard Nelson

Aroostook County (Caribou) Superior Court docket number RE-2009-31
FOR CLERK REFERENCE ONLY